In re:

                                                    Case No. 8:09-bk-13681-CED

SOUTHERN ROAD BUILDERS OF
POLK COUNTY, INC.,                               Chapter 11

_____Debtor._____/

## AMENDED  DISCLOSURE STATEMENT
## OF SOUTHERN ROAD BUILDERS OF POLK COUNTY, INC.

Richard J. McIntyre, Esquire
McIntyre, Panzarella, Thanasides,
   Eleff & Hoffman, P.L.
6943 E. Fowler Avenue
Tampa, Florida 33617

August 20, 2009

## I.  INTRODUCTION

This is the Amended Disclosure Statement (the "Amended Disclosure Statement") in the chapter 11 case of Southern Road Builders of Polk County, Inc. (the "Debtor") which filed its voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code on **June 26, 2009** (the "Petition Date"). This Amended Disclosure Statement contains information about the Debtor and describes the Chapter 11 Amended Plan of Reorganization (the "Amended Plan") filed by the Debtor on August 20, 2009.   A full copy of the Amended Plan is on file with the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the "Court") and included with the ballot packet mailed to creditors and equity security holders pursuant to the Court's order.

*Your rights may be affected.  You should read the Amended Plan and this Amended Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.*

The proposed distributions under the Amended Plan are discussed on pages 8 through 12 of this Amended Disclosure Statement.   General unsecured creditors are classified in Class 11, and will receive a distribution equal to ten percent (10%) of their allowed claim in monthly payments over sixty (60) months commencing ninety (90) days after the effective date of the Plan.

### A.  **Purpose of This Document**

This Amended Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case;
- How the Amended Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the Amended Plan is confirmed);
- Who can vote on or object to the Amended Plan;
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Amended Plan;
- Why the Debtor believes the Amended Plan is feasible, and how the treatment of your claim or equity interest under the Amended Plan compares to what you would receive on your claim or equity interest in liquidation; and
- The effect of confirmation of the Amended Plan.

*Be sure to read the Amended Plan as well as the Amended Disclosure Statement.  This Amended Disclosure Statement describes the Amended Plan, but it is the Amended Plan itself that will, if confirmed, establish your rights.*

### B.  **Deadlines for Voting and Objecting; Date of Amended Plan Confirmation Hearing**

The Court has not yet confirmed the Amended Plan described in this Amended Disclosure Statement.  This section describes the procedures pursuant to which the Amended Plan will or will not be confirmed.

1.   The **Hearing** at which the Court will determine whether to confirm the Amended Plan and approve the Amended Disclosure Statement will take place on  **September 14,**

**2009, at 2:30 p.m.**, in **Courtroom 10B, at the United States Bankruptcy Court, Sam M Gibbons Courthouse, 801 N. Florida Ave, Tampa, Florida**.

        2.      **Ballots**: **If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to** the U.S. Bankruptcy Court, 801 N. Florida Ave., Tampa Florida 33602 and send a copy to McIntyre, Panzarella, Thanasides, Eleff & Hoffman, P.L., 6943 East Fowler Ave, Tampa, Florida 33617.   See Section IV A. below for a discussion of voting eligibility requirements. **You must file your ballot with the Court, on or before September 8, 2009, or it may not be counted.**

        3.      Objections to this Amended Disclosure Statement or to the confirmation of the Amended Plan must be filed with the Court and served upon all parties in interest on the Local Rule 1007-2 Mailing Matrix by **September 8, 2009.**

4.        If you your require additional business information with regards to the Amended Plan, please contact Christopher Brock in writing at Southern Road Builders of Polk County, Inc. by mail at 2840 Security Lane Lakeland, Florida 33803.  Should you require additional legal information with regards to the Amended Plan, please contact Christopher Brock in writing at the foregoing address and also please send a copy to Debtor's counsel, McIntyre, Panzarella, Thanasides at 6943 E. Fowler Avenue, Tampa, Florida 33617.

      C.      **Disclaimer**

      **The Court has conditionally approved this Amended Disclosure Statement as containing adequate information to enable parties affected by the Amended Plan to make an informed judgment about its terms.  The Court has not yet determined whether the Amended Plan meets the legal requirements for confirmation, and the fact that the Court has conditionally approved this Amended Disclosure Statement does not constitute an endorsement of the Amended Plan by the Court, or a recommendation that it be accepted.  The Court's approval of this Amended Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan. Objections to the adequacy of this Amended Disclosure Statement may be filed until September 8, 2009.**

II.      **BACKGROUND**

      A.      **Description and History of the Debtor's Business**

The Debtor is a Florida corporation that began as B & B Tractor Works, Inc., a Florida corporation, in July of 2004 ("B&B").  B&B initially performed only grading work for the housing industry.  As the new residential housing market began to decline in 2007, so did B&B's workload. Realizing that it would need to branch out in order to continue to turn a profit, the Debtor searched for other ways to expand their operation. B&B had an opportunity to purchase Southern Road Builders of Polk County, Inc. ("Southern") which was a similar business that performed grading work for

commercial work sites. B&B Tractor purchased Southern in December of 2007 and B&B changed its name to Southern. Thereafter, the new entity known as Southern performed grading work for both residential and commercial sites.

B.  **Insiders of the Debtor**

- **Christopher Brock, President, Director**
  (2007 Compensation: $20,000.00)
  (2008 Compensation $78,353.90)

- **Nadara Brock**
  (2007 Compensation: $30,000.00)
  (2008 Compensation: $27,820.77)

- **Homer Brock**
  (2008 Compensation: $25,600.00)

C.  **Management of the Debtor Before and During the Bankruptcy**

During the two (2) years prior to the Petition Date, the officers, directors or other persons in control of the Debtor (collectively, the "Managers") were:

<u>2009</u>
Christopher Brock, President, Director
Ed Morrell, Director
Neil O'Toole, Director
Joseph Tedder, Sr., Director

<u>2008</u>
Christopher Brock, President Director
Ed Morrell, Director
Neil O'Toole, Director
Joseph Tedder, Sr., Director

<u>2007 (B&B Tractor Works, Inc.)</u>
Randy V. Battles, President, Director
Christopher Brock, Vice President, Director

Christopher Brock has continued as the President of the Debtor and has been responsible for the operation of the Debtor during the Debtor's chapter 11 case.

After the effective date of the order confirming the Amended Plan, the directors and officers of the Debtor (collectively the "Post Confirmation Managers") will be Christopher Brock who shall continue as the President and as a Director of the Debtor post confirmation and shall receive a salary of $1,500.00 per week. Likewise, Ed Morrell, Neil O'Toole and Joseph Tedder, Sr. will be directors of the Debtor post confirmation.

D.    **Events Leading to Chapter 11 Filing**

After acquiring Southern in December 2007, the Debtor was able to pay its debts as they came due as Southern continued to generate sufficient cash flow by performing grading work at both residential and commercial sites. During this period, the Debtor executed numerous plans to increase sales and control costs. However, by February 2009, despite Debtor's best efforts, the present economic climate severely curtailed Debtor's ability to find new projects and realize a profit. As a result, the Debtor had no choice other than to file for bankruptcy protection in an effort to reorganize.

E.    **Significant Events During the Bankruptcy Case**

- On June 26, 2009, Christopher Brock as President of the Debtor signs the Petition for Relief under Chapter 11 of the United States Bankruptcy Code; Mr. Brock is authorized by the Court to draw a salary of $1,500.00 per week.

- Debtor's Counsel is Richard J. McIntyre and the firm of McIntyre, Panzarella, Thanasides, Eleff & Hoffman, P.L. ("Debtor's Counsel"). On July 31, 2009, the Court enters an Order approving the retention of Debtor's Counsel.

- The Debtor filed Motions to Value equipment financed by First Financial Credit, Caterpillar Financial Services, John Deere and GMAC in order to determine the value of secured creditors allowed claim. Additionally, a Motion to Value assets securing the first position lien of Wachovia SBA Lending, Inc. will be filed in order to determine the value of Wachovia SBA Lending, Inc.'s allowed claim.

- The Court scheduled a hearing for **September 14, 2009 at 2:30 p.m.** to consider approval of this Amended Disclosure Statement and the Debtor's Amended Plan of Reorganization.

F.    **Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

G.    **Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in **Exhibit A**. These values are based upon the Debtor's estimated value. There were no recent financial statements issued by the Debtor before bankruptcy. Additionally, on July 27, 2009, Debtor filed its June 2009 post-petition operating report.

III.    **SUMMARY OF THE AMENDED PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

A.      **What is the Purpose of the Amended Plan of Reorganization?**

As required by the Code, the Amended Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Amended Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Amended Plan is confirmed, your recovery will be limited to the amount provided by the Amended Plan.

B.      **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Amended Plan does not comply with that required by the Code.  As such, the Amended Plan Proponent has *not* placed the following claims in any class:

1.      Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code.  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $0.00 | Paid as debts come due in ordinary course of business. |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | None known | Paid in full on or before the effective date of the Plan, or according to terms of obligation if later |
| Professional Fees, as approved by the Court. | $30,000.00 | Paid in full on or before the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerks Office Fees | $0.00 | Paid |
| Other administrative expenses | None known | Paid in full on or before the effective date of the Amended Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | 4,875.00 | Paid in full on or before the effective date of the Plan |

| TOTAL | $34, 875.00 | |
|-------|-------------|---|

2. Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief. There are no known holders of priority tax claims in this case.

### C.    Classes of Claims and Equity Interests

The following are the classes set forth in the Amended Plan:

2.01    <u>Class 1</u>.          All allowed claims entitled to priority (except priority tax claims) under § 507 of the Code

2.02    <u>Class 2</u>.          Wachovia SBA Lending, Inc. – Secured portion of claim

2.03    <u>Class 3</u>.          Wachovia Bank, National Association – Secured portion of claim, if any

2.04    <u>Class 4A</u>.        Caterpillar Financial Services - Secured portion of claim (303.5 Mini-Excavator)

        <u>Class 4B</u>.        Caterpillar Financial Services – Secured portion of claim (930 Wheel Loader)

        <u>Class 4C</u>.        Caterpillar Financial Services – Surrendering Equipment in full (924-G Wheel Loader)          satisfaction of the claim

2.05    <u>Class 5</u>.          Financial Federal Credit – Secured portion of claim

2.06    <u>Class 6</u>.          Trimble Financial Services – Secured portion of claim

2.07    <u>Class 7</u>.          GMAC – Secured portion of claim

2.08    <u>Class 8</u>.          John Deere Credit – Secured portion of claim

2.09    <u>Class 9</u>.          Mericap Credit Corporation – Surrendering Equipment in full satisfaction of the claim

2.10    <u>Class 10.</u>        Kevin Roggen, Sr. – Secured claim pursuant to purchase agreement

2.11    <u>Class 11.</u>        General Unsecured Creditors

2.12    <u>Class 12.</u>        Equity interests Holders of the Debtor.

**Secured Claims:** Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of

the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured creditors and their proposed treatment under the Plan:

**(INTENTIONALLY LEFT BLANK)**

| Class # | Description | Insider Y/N | Impairment | Treatment |
|---------|-------------|-------------|------------|-----------|
| 2 | *Secured claim of* Wachovia SBA Lending, Inc.<br><br>Collateral description: Lien on Equipment & Accounts Receivables*<br><br>Allowed Secured Amount $427,233 (estimated)<br><br>Priority of lien: First Position<br><br>Owed as of petition date $1,747,349.70 (estimated) | No | Impaired | Monthly Pmt  $7,476.58<br><br>Pmts Begins: October 1, 2009<br>Pmts Ends: October 1, 2014<br><br>Interest rate: 5%<br><br>Treatment of Lien<br>Collateral shall be valued and lien shall continue to extent of the value of the collateral |
| 3 | *Secured claim of* Wachovia Bank, National Association<br><br>Collateral description: Receivables<br><br>Allowed Secured Amount $0.00 (estimated)<br><br>Priority of lien: Second Position<br><br>Owed as of petition date $453,841.09 (estimated) | No | Impaired | Treatment of Lien:  Treated as an unsecured creditor to be paid ten percent (10%) of the total value of its allowed claim over sixty (60) months. |
| 4A | *Secured claim of* Caterpillar Financial Services<br><br>Collateral description: 303.5 Mini Excavator *<br><br>Allowed Secured Amount $15,000 (estimated)<br><br>Priority of lien: First Position<br><br>Owed as of petition date $24,000 (estimated) | No | Impaired | Monthly Pmt   $262.50<br><br>Pmts Begins: October 1, 2009<br>Pmts Ends: October 1, 2014<br><br>Interest rate 5%<br><br>Treatment of Lien<br>Collateral shall be valued and lien shall continue to extent of the value of the collateral  FTNT1 |
| 4B | *Secured claim of* Caterpillar Financial Services<br><br>Collateral description: 930 Wheel Loader *<br><br>Allowed Secured Amount $30,000 (estimated)<br><br>Priority of lien: First Position<br><br>Owed as of petition date $62,085.66 (estimated) | No | Impaired | Monthly Pmt   $525.00<br><br>Pmts Begins: October 1, 2009<br>Pmts Ends: October 1, 2014<br><br>Interest rate 5%<br><br>Treatment of Lien<br>Collateral shall be valued and lien shall continue to extent of the value of the collateral FTNT 1 |

---

1 Adequate protection payments at the contract rate will be paid pursuant to the Court's Order.

| | | | | |
|---|---|---|---|---|
| **4C** | *Secured claim of*<br>Caterpillar Financial Services<br><br>Collateral description:<br>924-G Wheel Loader<br><br>Allowed Secured Amount<br>$79,000<br><br>Priority of lien:<br> First Position<br><br>Owed as of petition date<br>$79,000 (estimated) | No | Unimpaired | Treatment of Lien<br>Return Equipment in full satisfaction of Lien. |
| **5** | *Secured claim of*<br>First Financial Credit<br><br>Collateral description:<br>Sterling Model LT9500*<br>Dump Truck<br><br>Allowed Secured Amount<br>$25,000.00 (estimated)<br><br>Priority of lien:<br> First Position<br><br>Owed as of petition date<br>$32,869.93 (estimated) | No | Impaired | Monthly Pmt   $437.50<br><br>Pmts Begins: October 1, 2009<br>Pmts Ends: October 1, 2014<br><br>Interest rate 5%<br><br>Treatment of Lien<br>Collateral shall be valued and lien shall continue to extent of the value of the collateral |
| **6** | *Secured claim of*<br>Trimble Finance<br><br>Collateral description:<br>GPS Surveying Equipment<br>Allowed Secured Amount<br>$13,179.50 (estimated)*<br><br>Priority of lien:<br> First Position<br><br>Owed as of petition date<br>$13,179.50 (estimated) | No | Impaired | Monthly Pmt  $ 230.64<br><br>Pmts Begins: October 1, 2009<br>Pmts Ends: October 1, 2014<br><br>Interest rate 5%<br><br>Treatment of Lien<br>Collateral shall be valued and lien shall continue to extent of the value of the collateral |
| **7** | *Secured claim of*<br>GMAC<br><br>Collateral description<br>2006 Chevy 5500 Pick-up*<br><br>Allowed Secured Amount<br>$20,000.00 (estimated)<br><br>Priority of lien:<br> First Position<br><br>Owed  as of petition date<br>$23,942.41 (estimated) | No | Impaired | Monthly Pmt    $ 350.00<br><br>Pmts Begins: October1,  2009<br>Pmts Ends: October 1, 2014<br><br>Interest rate 5%<br><br>Treatment of Lien<br>Collateral shall be valued and lien shall continue to extent of the value of the collateral |

| | | | | |
|---|---|---|---|---|
| 8 | *Secured claim of* John Deere Credit<br><br>Collateral description 6430 Tractor *<br><br>Allowed Secured Amount $30,000.00 (estimated)<br><br>Priority of lien: First Position<br><br>Owed as of petition date $37,989.90 (estimated) | No | Impaired | Monthly Pmt   $ 612.50<br><br>Pmts Begins: October 1, 2009<br><br>Pmts Ends: October 1, 2014<br><br>Interest rate 5%<br><br>Treatment of Lien<br>Collateral shall be valued and lien shall continue to extent of the value of the collateral |
| 9 | *Secured claim of* Mericap Credit Corporation<br><br>Collateral description 2007 Peterbilt Semi<br><br>Allowed Secured Amount $150,000.00 (estimated)<br><br>Priority of lien First Position<br><br>Owed as of petition date $150,000.00 (estimated) | No | Unimpaired | Treatment of Lien<br>Collateral shall be surrendered in full satisfaction of Lien. |
| 10 | *Claim of* Kevin Roggen, Sr.<br><br>Collateral description Purchase Money Security Interest/Blanket Lien<br><br>Allowed Secured Amount $0.00<br><br>Priority of lien Second Position<br><br>Owed as of petition date $ 1,200,000 (estimated) | No | Impaired | Treatment:<br>The Debtor shall pay the holder of this claim $2,000.00 per month for ten (10) years  in full satisfaction of this claim. |

\*        A Motion to Value Collateral has been or will be filed.

2.        **Priority Claims:** Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a claim receive cash on the effective date of the Plan, equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment. There are no known priority claims in this case that meet the foregoing criteria but in the event there is a claim, such claim is a Class 1 Claim.

3. **General Unsecured Claims:** General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 11 which contains general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| **11** | General Unsecured Class<br>Approximately $3,398,701.86 (FN2)<br>Total to be paid: $339,870.17 | Impaired | Monthly Pmt        $5,664.50<br>Pmts Begin      January 1, 2010<br><br>Pmts End         January 1, 2015<br>                      (60 payments)<br><br>Estimated percent of<br>claim paid         10% |

4. Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders.

The following chart sets forth the Amended Plan's proposed treatment of the classes of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| **12** | Equity interest holders | Impaired | Debtor's equity shall be extinguished and will be reissued to equity security holders in exchange for the sum of $40,000.00 |

D. **Means of Implementing the Plan**

1. Payments and distributions under the Amended Plan will be funded by the following:

The Debtor has filed motions to value the secured creditors' claims pursuant to 11 U.S.C. §502. Upon a determination of the Court of the value of the secured portion of the claim, the allowed claim will be bifurcated into a secured claim and a resulting unsecured claim. The Debtor will retain the assets and will continue to perform residential and commercial grading work. From the new earnings of the reorganized entity, together with the capital contribution from the equity security holders, Debtor will pay the total value of allowed secured claims, together with five percent (5%) interest to secured creditors amortized over sixty (60) months. Debtor will pay unsecured creditors ten percent (10%) of their allowed claim over sixty (60) months.

---

2 Amount is estimated.

2. The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|---|---|---|---|---|
| Christopher Brock | 50% shareholder of the Debtor | Yes | President | $1,500.00/wk. |
| Ed Morrell | 16.6 % shareholder of the Debtor | Yes | Director | $0.00 |
| Neil O'Toole | 16.6 % shareholder of the Debtor | Yes | Director | $0.00 |
| Joseph Tedder, Sr. | 16.6 % shareholder of the Debtor | Yes | Director | $0.00 |

E.     **Risk Factors**

The management of the Debtor is not aware of any factors that present a risk to the success of the reorganization. The success of the on-going business and the Amended Plan provisions for post-petition payments are dependent upon the on-going success of the Debtor's business and its ability to generate sufficient cash flow.

F.     **Executory Contracts and Unexpired Leases**

The Plan, in Section 6.01, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Section 6.01 also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Amended Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not set forth under Section 6.01 of the Amended Plan will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Amended Plan within the deadline for objecting to the confirmation of the Plan.

***The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract Is <u>September 30, 2009</u>.*** Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

G.     **Tax Consequences of Plan**

**Creditors and equity interest holders concerned with how the Amended Plan may affect their tax liability should consult with their own accountants, attorneys, and /or advisors.**

**No analysis of the Federal tax consequences of confirmation of the Amended Plan has been made and you should consult with your own tax expert to determine what, if any, tax consequences may result from confirmation of the Debtor's Amended Plan of Reorganization.**

IV**.     CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Amended Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that the Amended Plan must be proposed in good faith; at least one impaired class of claims must accept the Amended Plan, without counting votes of insiders; the Amended Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Amended Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

A.     **Who May Vote or Object**

Any party in interest may object to the confirmation of the Amended Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Amended Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Amended Plan Proponent believes that Classes 2 through 4B, 5 through 8 and 10 through 12, respectively, are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Amended Plan. The Amended Plan Proponent believes that Class 1 claims, if any, are unimpaired and that holders of claims in this Class therefore do not have the right to vote to accept or reject the Amended Plan. Furthermore, the Amended Plan Proponent believes that Classes 4C and 9 are unimpaired and therefore do not have the right to vote to accept or reject the Amended Plan.

1.     Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtors' schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity

interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case is <u>September 30, 2009.</u>***

***The deadline for filing objections to claims is thirty (30) days after the effective date of the Amended Plan.***

    2.  As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Amended Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Amended Plan alters the legal, equitable, or contractual rights of the members of that class.

    3.  The holders of the following five types of claims and equity interests are ***not*** entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;
- administrative expenses.
- 

***Even if you are not entitled to vote on the Amended Plan, you have a right to object to the confirmation of the Amended Plan and to the adequacy of the Amended Disclosure Statement.***

    4.  A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject the Amended Plan in each capacity, and should cast one ballot for each claim.

  B.  **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Amended Plan unless (1) at least one impaired class of creditors has accepted the Amended Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Amended Plan is eligible to be confirmed by a cram down of non-accepting classes, as discussed below in Section B(2)

1.     A class of claims accepts the Amended Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Amended Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Amended Plan.

A class of equity interests accepts the Amended Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Amended Plan.

2.     Even if one or more impaired classes reject the Amended Plan, the Court may nonetheless confirm the Amended Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A Plan that binds non-accepting classes is commonly referred to as a "cramdown" plan. The Code allows the Plan bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a cramdown at confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

C.     **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Amended Plan will receive at least as much under the Amended Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Amended Disclosure Statement as **Exhibit B**.

D.     **Feasibility**

The Court must find that confirmation of the Amended Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1.     The Debtor believes that it will have enough cash on hand on the effective date of the Amended Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan and the sources of that cash are attached to this Amended Disclosure Statement as **Exhibit C**.

2.     The Debtor must also show that it will have enough cash over the life of the Amended Plan to make the required Amended Plan payments. The Amended Plan Proponent has provided projected financial information. Those projections are attached hereto as **Exhibit D**.

The Debtor's financial projections show that the Debtor will have an sufficient annual cash flow, after paying operating expenses to cure all payments identified within the Plan. The final Amended Plan payment is expected to be paid on January 1, 2015.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

V.    **EFFECT OF CONFIRMATION OF PLAN**
      A.    **DISCHARGE OF DEBTOR**

Except as otherwise expressly provided in the Amended Plan or in the confirmation order, the confirmation order shall operate as a discharge, pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the effective date of the Plan, of any and all debts of, and claims of any nature whatsoever against the Debtor that arose at any time prior to the confirmation date, including any and all claims for principal and interest, whether accrued before, on or after the Petition Date.

      B.    **DISCHARGE OF CHRISTOPHER BROCK AND NADARA BROCK**

As of the effective date of the Amended Plan, Christopher Brock and Nadara Brock shall be forever discharged and released from any and all personal guarantees and mortgages they executed for the benefit of B&B Tractor Works, Inc. and Southern Road Builders of Polk County, Inc. in favor of Wachovia SBA Lending, Inc., Wachovia Bank, National Association, (Line of Credit and Lease), Caterpillar Financial Services, Financial Federal Credit, Trimble Financial Services, GMAC, John Deere Credit, Sonitrol, Cintas, and MeriCap Credit Corporation, to the fullest extent permitted by applicable law. Attached hereto as **Exhibit E** is a liquidation analysis of Christopher Brock's personal assets which demonstrates that he does not own or hold assets with a value of more than $10,000 in the aggregate that would be available to pay potential judgment creditors.

      C.    **MODIFICATION OF THE AMENDED PLAN**

The Debtor may modify the Amended Plan at any time before confirmation of the Plan. However, the Court may require a new Amended Disclosure Statement and/or re-voting on the Plan.

The Debtor may also seek to modify the Amended Plan at any time after confirmation only if (1) the Amended Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

      D.    **FINAL DECREE**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the reorganized Debtor, or such other party as the Court shall designate in the Amended Plan confirmation order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

VI.    **OTHER AMENDED PLAN PROVISIONS**

      A.    **GENERAL PROVISIONS**

            1.    **Revestment of Reorganized Debtor.**  On the Effective Date of the Plan, except as otherwise expressly provided in the Plan, the reorganized Debtor shall be revested with all of their assets free and clear of any and all liens, debts, obligations, claims, cure claims, liabilities, equity interests, and all other interests of every kind and nature (except for any permitted encumbrances), and the confirmation order shall so provide.

2.    **Section 1146 Exemption**.  Pursuant to Section 1146(c) of the Bankruptcy Code, the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Amended Plan or any Amended Plan document, or the re-vesting, transfer, or sale of any real or personal property of, by, or in the Debtor or the reorganized Debtor pursuant to, in implementation of, or as contemplated by the Amended Plan or any Amended Plan document shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.

3.    **General Causes of Action.**  On the Effective Date, the Reorganized Debtor shall retain all causes of action, except to the extent a creditor or other third party has been specifically released from any cause of action that the estate may have by the terms of the Amended Plan or by Bankruptcy Court order.  Neither a vote to accept the Amended Plan by any creditor nor the entry of the confirmation order will result in the waiver or release of any of the estate's causes of action against such creditor.  Confirmation of the Amended Plan and entry of the confirmation order are not intended to and shall not be deemed to have any *res judicata* or other effect which would preclude or inhibit prosecution of such causes of action following confirmation of the Plan, whether specified in this Amended Plan or otherwise.

4.    **Settlement of Causes of Action.**  The reorganized Debtor may settle any cause of action with the approval of the Bankruptcy Court.

5.    **Adversary Proceeding(s).**  In the event that an adversary proceeding is filed against the Debtor, such shall be deemed dismissed with prejudice on the effective date of the Plan, with each party to bear its own costs and attorney's fees in conjunction with such proceeding.  All issues and controversies shall be deemed fully settled and resolved upon confirmation, with each of such parties having fully released each other from any and all claims and defenses whatsoever in conjunction with their claims, other than as specifically set forth in this Plan, or the order confirming the Plan.

6.    **Dismissal of Lawsuits.**  All lawsuits filed against the Debtor shall be deemed dismissed with prejudice on the Effective Date, with each party to bear its own costs and attorney's fees in conjunction with such lawsuits.  All issues and controversies shall be deemed fully settled and resolved upon confirmation, with each of such parties having fully released each other from any and all claims and defenses whatsoever, other than as specifically set forth in this Plan, or the order confirming the Plan.

## VII.    PROVISIONS GOVERNING DISTRIBUTIONS

A.    **Distributions.**  Each holder of an allowed claim shall be paid as provided by this Plan; provided however, that if, on the Distribution Date, any disputed claims remain, then the reorganized Debtor shall withhold payment in respect of any disputed claim until a final order has been entered by the Bankruptcy Court resolving such disputed claim.

B.    **Unclaimed Distributions.**

1.    If the holder of an allowed claim fails to negotiate a check issued to such holder within ninety (90) days of the date such check was issued, then the reorganized Debtor shall provide written notice to such holder stating that unless such holder negotiates such check within thirty (30) days of the date of such notice, the amount of cash attributable to such check shall be deemed to be unclaimed, such holder's claim shall no longer be deemed to be allowed, and such holder shall be

deemed to have no further claim in respect of such check and shall not participate in any further distributions under the Amended Plan.

        2.      If a distribution pursuant to the Amended Plan to any holder of an allowed claim is returned to the reorganized Debtor due to an incorrect or incomplete address for the holder of such allowed claim, and no claim is made to the reorganized debtor as to such distribution within one hundred twenty (120) days of the return of such distribution, then the amount of cash attributable to such distribution shall be deemed to be unclaimed and such holder shall be deemed to have no further claim in respect of such distribution and shall not participate in any further distributions under the Amended Plan.

        3.      Any unclaimed distribution as described above shall be donated to a Charitable Organization

    C.    **Transfer of Claim.**  In the event that the holder of any claim shall transfer such claim on and after the effective date, it shall immediately advise the reorganized Debtor in writing of such transfer. The reorganized Debtor shall be entitled to assume that no transfer of any claim has been made by any holder unless and until the reorganized Debtor shall have received written notice to the contrary. Each transferee of any claim shall take such claim subject to the provisions of the Amended Plan and to any request made, waiver or consent given, or other action taken hereunder and, except as otherwise expressly provided in such notice, the reorganized Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Amended Plan.

    D.    **Determination of Claims.**

        (a) Following the effective date of the Amended Plan and except as may otherwise be provided herein, the reorganized Debtor shall have standing to and may object to any administrative claim, priority claim, priority tax claim, secured claim, and unsecured claims. Unless otherwise ordered by the Bankruptcy Court, and except as to any late-filed claims and claims resulting from the rejection of executory contracts or unexpired leases, all objections to claims shall be filed with the Bankruptcy Court on or before sixty (60) days following the effective date (unless such period is extended by the Bankruptcy Court upon motion of the reorganized Debtor), and the confirmation order shall contain appropriate language to that effect.

        (b) Disputed claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. §157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated claim would cause undue delay in the administration of the reorganization case, such claim shall be estimated by the Bankruptcy Court for purposes of allowance and distribution. Upon receipt of a timely-filed Proof of Claim, the Debtor or other party in interest may file a request for estimation along with its objection to the claim set forth therein. The determination of claims in estimation hearings shall be binding for purposes of establishing the maximum amount of the claim for purposes of allowance and distribution. Procedures for specific estimation hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the disputed claim.

    E.    **De Minimis Distributions on Account of Allowed Claims.**  To avoid the disproportionate expense and inconvenience associated with making distributions in amounts of less

than one dollar ($1.00) each with respect to allowed claims, the reorganized Debtor shall not be required to make, and shall be excused from making, distributions in amounts of less than $1.00 each to holders of allowed claims.

## VIII. CONDITIONS PRECEDENT

A. **Condition Precedent to Confirmation of the Plan.** The Bankruptcy Court shall not enter the confirmation order, confirmation of the Amended Plan shall not be effective, and the Debtor shall not be obligated to consummate the Plan, unless the Bankruptcy Court shall have made such findings and determinations regarding the Amended Plan as shall enable the entry of the confirmation order in a manner consistent with the provisions of the Amended Plan and in form and substance satisfactory to the Debtor.

B. **Condition Precedent to Effective Date**. The Amended Plan shall not be consummated and the effective date shall not occur until the Bankruptcy Court has entered the confirmation order, in form and substance satisfactory to the Debtor, on the docket of this case, and no stay of the confirmation order shall be in effect.

C. **Waiver of Conditions Precedent.** The Debtor may elect to waive any condition precedent set forth above that has not been satisfied on or before the date of the confirmation hearing.

## IX. INJUNCTION, EXCULPATION AND RELEASE PROVISIONS

A. **General Injunction**. Pursuant to Sections 105, 1123, 1129, and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Amended Plan, as of the confirmation date, except as otherwise provided in the Amended Plan or in the confirmation order, all persons or entities that have held, currently hold or may hold a claim or other debt or liability, that is discharged pursuant to the terms of the Amended Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged claims, debts or liabilities, other than actions brought to enforce any rights or obligations under the Amended Plan or the Amended Plan documents: (a) commencing or continuing in any manner any action or other proceeding against the Debtor, the reorganized Debtor, or its respective properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, the reorganized Debtor, or their assets; (c) creating, perfecting or enforcing any lien or encumbrance against the Debtor, the reorganized Debtor, or their assets; (d) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability or obligation due to the Debtor or the reorganized Debtor; or (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Amended Plan or the confirmation order. The Debtor and the reorganized Debtor shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Amended Plan and is essential to its implementation.

B. **Exculpation from Liability**. The Debtor, the reorganized Debtor, its respective directors, officers, employees, agents, representatives, accountants, attorneys, and professionals (acting in such capacity), and their respective heirs, executors, administrators, successors, and assigns, will neither have nor incur any liability whatsoever to any person or other entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Amended Disclosure

Statement, any Amended Plan document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Amended Plan or the reorganization case. The rights granted herein are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtor, the reorganized Debtor, and its respective agents have or obtain pursuant to any provision of the Bankruptcy Code. This exculpation from liability provision is an integral part of the Amended Plan and is essential to its implementation.

        C.      **Release.**  To the extent permitted under the Bankruptcy Code, on the Effective Date of the Plan, the post confirmation Debtor shall be unconditionally and hereby is deemed to be unconditionally released from any and all claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence taking place between the Petition Date and the Effective Date, which is in any way relating to the Debtor, this reorganization case, any assets of the Debtor, the business or operations of the Debtor, the Plan, or any of the transactions contemplated thereby. The confirmation order shall enjoin the prosecution by any person or entity, whether directly, derivatively or otherwise, of any such claim, obligation, suit, judgment, damage, right, remedy, cause of action, charge, cost, debt, indebtedness, or liability which arose or accrued during such period or was or could have been asserted against any of the released parties, except as otherwise provided in the Plan, the Amended Plan documents or the confirmation order. Each of the released parties shall have the right to independently seek enforcement of this release provision. This release provision is an integral part of the Amended Plan and is essential to its implementation.

        D.      **Mutual Release.**  In consideration of the payments and other things of value agreed to under the Plan, each creditor with an allowed claim hereby releases each other creditor from all claims, known or unknown, against each other in relation to the obligations, if any, among the creditors with allowed claims with respect to debts claimed in this proceeding to be owed to them by the Debtor.

        E.      **Term of Certain Injunctions and Automatic Stay.**  All injunctions or automatic stays provided for in the reorganization case pursuant to Sections 105, 362, or other applicable provisions of the Bankruptcy Code, or otherwise, and in existence on the confirmation date, shall remain in full force and effect until the effective date. Any preliminary or permanent injunction entered by the Bankruptcy Court shall continue in full force and effect following the confirmation date and the final decree date, unless otherwise ordered by the Bankruptcy Court.

        F.      **Untimely Claims Provisions**

        1.      **No Liability for Tax Claims.**  Unless a taxing governmental authority has asserted a claim against the Debtor before the bar date or administrative expense claims bar date established with respect to such claim, no claim of such governmental authority shall be allowed against the Debtor or the reorganized Debtor for taxes, penalties, interest, additions to tax, or other charges arising out of the failure, if any, of the Debtor, any of his affiliates, or any other person or entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

        2.      **No Liability for Untimely Administrative Expense Claims.**  Holders of administrative expense claims (including holders of any claims for post-petition federal, state or local taxes) that do not file an application or other Bankruptcy Court-approved pleading by the

administrative expense claims bar date shall be forever barred from asserting such administrative expense claims against the Debtor, the reorganized Debtor, or any of its respective properties.

## X.     RETENTION OF JURISDICTION

A.     **General Retention.**   Notwithstanding the entry of the confirmation order and the occurrence of the effective date, until the reorganization case is closed, the Bankruptcy Court shall retain the most full and extensive jurisdiction of the reorganization case that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Amended Plan are carried out.

B.     **Specific Purposes.**   In addition to the general retention of jurisdiction set forth in this Plan, after confirmation of the Amended Plan and until the reorganization case is closed, the Bankruptcy Court shall retain jurisdiction of the reorganization case for the following specific purposes:

(1) to allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any claim or equity interest, including the resolution of any application for an administrative expense, and to determine any and all objections to the allowance or priority of claims or equity interests;

(2) to determine any and all cases, controversies, suits or disputes arising under or relating to the Amended Plan or the confirmation order (including regarding the effect of any release, discharge, or injunction provisions provided for herein or affected hereby and regarding whether conditions to the consummation and/or effective date of the Amended Plan have been satisfied) and to enforce the obligations under the Plan;

(3) to determine any and all applications for allowance of compensation of professionals and reimbursement of expenses under Section 330, 331 or 503(b) of the Bankruptcy Code arising out of or relating to the reorganization case; provided, however, that this retention of jurisdiction shall not require prior Bankruptcy Court approval of the payment of fees and reimbursement of expenses of professionals after confirmation of the Amended Plan unless an objection to such fees and expenses has been made by the Debtor or the reorganized Debtor;

(4) to determine any and all motions pending as of the date of the Confirmation Hearing (including pursuant to the Amended Plan) for the rejection, assumption or assignment of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable (including assumed contracts), and to determine the allowance of any claims resulting from the rejection thereof or any amount necessary to cure defaults in any assumed and/or assigned executory contracts or unexpired leases (including assumed contracts), including cure claims;

(5) to determine any and all motions, applications, adversary proceedings, contested or litigated matters, causes of action, and any other matters involving the Debtor or the reorganized Debtor commenced in connection with, or arising during, the reorganization case and pending on the Effective Date, including approval of proposed settlements thereof;

(6) to enforce, interpret, and administer the terms and provisions of the Amended Plan and the Amended Plan documents;

(7) to modify any provisions of the Amended Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

(8) to consider and act on the compromise and settlement of any claim against or equity interest in the Debtor or the estate;

(9) to assure the performance by the reorganized Debtor of its obligations to make distributions under the Amended Plan;

(10) to correct any defect, cure any omission, reconcile any inconsistency, and make any other necessary change or modification in or to the Amended Disclosure Statement, the Amended Plan, the Amended Plan documents, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Amended Plan in the event the effective date does not occur as provided herein so that the intended effect of the Amended Plan may be substantially realized thereby;

(11) to resolve any disputes concerning any release of a nondebtor hereunder or the injunction against acts, employment of process, or actions against such nondebtor arising hereunder;

(12) to enforce all orders, judgments, injunctions, and rulings entered in connection with this reorganization case;

(13) to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Amended Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Amended Plan, the Amended Disclosure Statement (if required),or the confirmation order, including the Amended Plan documents;

(14) to review and approve any sale or transfer of assets or property by the Debtor or the reorganized Debtor, including prior to or after the date of the Amended Plan, and determine all questions and disputes regarding such sales or transfers;

(15) to determine all questions and disputes regarding title to the assets of the Debtor, the estate, or the reorganized Debtor;

(16) to determine any motions or contested matters relating to the causes of action, whether brought before or after the effective date;

(17) to determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtor arising on or prior to the effective date or arising on account of transactions contemplated by the Amended Plan;

(18) to resolve any determinations which may be requested by the Debtor or the reorganized Debtor of any unpaid or potential tax liability or any matters relating thereto under Sections 505 and 1146(d) of the Bankruptcy Code, including tax liability or such related matters for any taxable year or portion thereof ending on or before the effective date;

(19) to issue injunctions, enter, and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any person or entity with consummation, implementation or enforcement of the Amended Plan or the confirmation order;

(20) to enter and implement such orders as are necessary or appropriate if the confirmation order is for any reason modified, stayed, reversed, revoked, or vacated;

(21) to determine any other matters that may arise in connection with or relating to the Plan, the Amended Disclosure Statement (if required), the confirmation order, or the Amended Plan documents;

(22) to enter such orders as are necessary to implement and enforce the injunctions described herein;

(23) to determine such other matters and for such other purposes as may be provided for in the confirmation order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; and

(24) to enter an order concluding and terminating the reorganization case.

C.    **Closing of the Reorganization Case.**   In addition to the retention of jurisdiction set forth above, the Bankruptcy Court shall retain jurisdiction of the reorganization case to enter an order reopening the reorganization case after it has been closed.

## XI.         MISCELLANEOUS PROVISIONS

A.    **No Admissions.**   The Amended Plan provides for the resolution, settlement and compromise of claims against and equity interests in the Debtor.  Nothing herein shall be construed to be an admission of any fact or otherwise binding upon the Debtor in any manner prior to the Effective Date.

B.    **Revocation or Withdrawal of the Plan.**  The Debtor reserves the right to revoke or withdraw the Amended Plan prior to the confirmation date.  If the Debtor revokes or withdraws the Amended Plan, or if confirmation of the Amended Plan does not occur, then the Amended Plan shall be deemed null and void in all respects and nothing contained in the Amended Plan shall be deemed to (a) constitute a waiver or release of any claims by or against, or equity interests in, the Debtor or any other person, or (b) prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

C.    **Settlement of Claims.** The reorganized Debtor (a) may commence or continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of any claim or cause of action which the Debtor in possession had or had power to assert immediately prior to the confirmation date, and (b) may settle or adjust such claim or cause of action.

D.    **Standard for Approval by the Bankruptcy Court.**  In the event any of the matters described herein are brought for approval before the Bankruptcy Court, then any such approval shall mean the entry of an order by the Bankruptcy Court approving the matter using the standards for approval of similar matters by a Chapter 11 Debtor in possession.

E.    **Further Assurances.**  The Debtor or the reorganized Debtor (as the case may be) agrees and is authorized to execute and deliver any and all papers, documents, contracts, agreements, and instruments that may be necessary to carry out and implement the terms and conditions of the Plan.

F.    **Headings.**    The headings and table of contents used in the Amended Plan are for convenience and reference only and shall not constitute a part of the Amended Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

G.    **Notices.**    All notices, requests, or other documents in connection with or required to be served by the Amended Plan shall be in writing and shall be sent by first class United States mail, postage prepaid, or by overnight delivery by a recognized courier service, to:

If to the Debtor or the Reorganized Debtor:

Southern Road Builders of Polk County, Inc.
2840 Security Lane
Lakeland, Florida 33803

with a mandatory copy to:

McIntyre, Panzarella, Thanasides,
    Eleff & Hoffman, P. L.
6943 E. Fowler Avenue
Tampa, Florida, 33617

H.    **Contemporaneous Service.**    Copies of all notices under the Amended Plan to any party shall be given to the Debtor and the reorganized Debtor and its counsel, contemporaneously with the giving of notice to such party.

I.    **Changes of Address.**    Any entity may change the person or address to whom or to which notices are to be given hereunder by filing a written instrument to that effect with the Bankruptcy Court and serving same on the parties set forth above.

J.    **Governing Law.**    Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or to the extent that the Amended Plan or the provision of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Amended Plan provides otherwise, the rights and obligations arising under the Amended Plan shall be governed by, construed, and enforced in accordance with the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

K.    **Limitation of Allowance.**    No attorneys' fees, punitive damages, penalties, special damages, lost profits, treble damages, exemplary damages, or interest shall be paid with respect to any claim or equity interest except as specified herein or as allowed by a Final Order of the Bankruptcy Court.

L.    **Estimated Claims.**    To the extent any Claim is estimated for any purpose other than for voting, then in no event shall such Claim be allowed in an amount greater than the estimated amount.

M.    **Consent to Jurisdiction.**    Upon any default under the Plan, the Debtor and the reorganized Debtor consent to the jurisdiction of the Bankruptcy Court, or any successor thereto, and agree that it shall be the preferred forum for all proceedings relating to any such default. By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by filing any cure claim, by voting on the Plan, or by entering an appearance in the reorganization case, all creditors and other parties in interest, including foreign creditors and foreign parties in interest, have consented, and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy

Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Amended Plan or the reorganization case, including the matters and purposes set forth in this Plan.  The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in this Plan.

N.      **Setoffs.**  Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor may, but shall not be required to, set off against any claim and the payments or other distributions to be made pursuant to the Amended Plan in respect of such claim, claims of any nature whatsoever the Debtor may have against the holder of such claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim that the Debtor may have against such holder.

O.      **Successors and Assigns.**  The rights, benefits, duties, and obligations of any person named or referred to in the Amended Plan shall be binding upon and shall inure to the benefit of any heir, executor, administrator, successor, or assign of such person.

P.      **No Postpetition Interest.**  Except as expressly stated in the Amended Plan or otherwise allowed by a Final Order of the Bankruptcy Court, no holder of an allowed claim shall be entitled to the accrual of postpetition interest or the payment of postpetition interest, penalties, or late charges on account of such claim for any purpose.

Q.      **Modification of Payment Terms.**  The reorganized Debtor reserves the right to modify the treatment of any allowed claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the effective date, upon the consent of the holder of such allowed claim.

R.      **Entire Agreement.**  The Amended Plan and Amended Plan documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and documents.  No person shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

S.      **Severability of Amended Plan Provisions.**  If, prior to confirmation, any term or provision of the Amended Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Amended Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation.  The confirmation order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

T.      **Confirmation Order and Amended Plan Control.**  To the extent the confirmation order or the Amended Plan is inconsistent with the Amended Disclosure Statement or any agreement entered into between the Debtor and any third party, unless otherwise expressly provided in the Plan, the Amended Plan controls the Amended Disclosure Statement and any such agreements, and the confirmation order (any and other orders of the Court) shall be construed together and consistent with the terms of the Plan.

U.      **Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Southern Road Builders of Polk County, Inc.

By:/s/Christopher Brock
Christopher Brock, President

**Exhibit A**  Identity and Value of Material Assets of Debtor

| | | |
|---|---|---|
| Cash on hand | $ | 180,000.00 |
| Accounts receivable | $ | 227,233.00 |
| Machinery & equipment | $ | 188,100.00 |
| GMC 2006 P/U Truck | $ | 20,000.00 |
| John Deere 6430 Utility Tractor | $ | 30,000.00 |
| Caterpillar 303.5 Mini Excavator | $ | 15,000.00 |
| Caterpillar 930 Wheel Loader | $ | 30,000.00 |
| Sterling Model Dump Truck | $ | 25,000.00 |
| Office furniture & equipment | $ | 11,900.00 |
| GPS Survey Equipment | $ | 13,179.50 |

**Exhibit B –** Liquidation Analysis

***Amended Plan Proponent's Estimated Liquidation Value
of Assets***

**Assets**

| | | |
|---|---|---|
| a. Cash on hand | $ 180,000.00 | |
| b. Accounts receivable | $ 227,233.00 | |
| c. Office furniture & equipment | $ 11,900.00 | |
| e. Machinery & equipment (includes Vehicles) | $ 188,100.00 | |
| ***Total Assets at Liquidation Value*** | **$ 607,233.00** | |

**Less:**
Secured creditors recoveries $ 607,233.00
**Less:**
Chapter 11 trustee fees and expenses $ 4,875.00
**Less:**
Chapter 11 administrative expenses $ 30,000.00
**Less:**
Priority claims, excluding administrative expense claims $ 0.00
**[Less:**

(1) Balance for unsecured claims $ **-34,875.00**

(2) Total dollar amount of unsecured claims **$ 3,398,701.86**

***Percentage of Claims Which Unsecured Creditors Would
Receive Or Retain in a Chapter 7 Liquidation:*** 0%

***Percentage of Claims Which Unsecured Creditors Will
Receive or Retain under the Plan:*** 10%

**Exhibit C** – Cash on hand on the effective date of the Plan

| | | |
|---|---:|---:|
| **Cash on hand on effective date of the Plan**: | $ | 180,000.00 |

*Less* B

| | | |
|---|---:|---:|
| Amount of  administrative expenses payable on effective date of the Amended Plan | - | 30,000.00 |
| | **-** | 4,875.00 |
| Amount of statutory costs and charges | - | 0.00 |
| Amount of cure payments for leases and executory contracts | - | 0.00 |
| Other Amended Plan Payments due on effective date of the Amended Plan | <u>-</u> | <u>0.00</u> |
| Balance after paying these amounts............... | $ | <u>145,125.00</u> |

The sources of the cash Debtor will have on hand by the effective date of the Amended Plan are estimated as follows:

| | | |
|---:|---:|---|
| $ | 150,000.00 | Cash in Debtor's bank account now |
| + | 30,000.00 | Additional cash Debtor will accumulate from net earnings between now and effective date of the Amended Plan |
| + | 0.00 | Borrowing |
| + | 40,000.00 | Capital Contributions |
| + | 10,000.00 | Other |
| **$** | **230,000.00** | **Total** |

30

**Exhibit D** Projections of Cash Flow and Earnings for Post-Confirmation Period